(No. 51614.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ROY ALAN NUNN, Appellee.

*Opinion filed October 19, 1979.*

William J. Scott, Attorney General, of Springfield, and Thomas Homer, State's Attorney, of Lewistown (Donald B. Mackay, Carolyn B. Notkoff, James A. Devine, and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and John X. Breslin and Gerry R. Arnold, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, of Ottawa (Mark W. Burkhalter, Assistant Defender, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

Early in the morning of October 30, 1976, Roy Alan Nunn, the defendant, was driving his truck in a westerly direction on U.S. Highway 24 in Fulton County when it swerved into the eastbound lane and struck an auto driven by Mrs. Carol Bedwell. She subsequently lost control of her car and it crashed into another westbound vehicle. Mrs.

Bedwell died from injuries she sustained. A criminal information was filed against Nunn in the circuit court of Fulton County, and after a jury trial he was convicted of reckless homicide (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a)), leaving the scene of an accident (Ill. Rev. Stat. 1975, ch. 95½, par. 11—401(a)), and driving on a suspended license (Ill. Rev. Stat. 1975, ch. 95½, par. 6—303). He was sentenced to concurrent terms of one to three years on the reckless homicide conviction and 364 days on each of the other convictions.

During the trial the trial judge had refused to instruct the jury that the offense of leaving the scene of an accident involving death or personal injury required proof of knowledge by the accused that an accident had occurred. The defendant appealed only from his conviction on this charge and the appellate court reversed, holding that "knowledge was an element of the offense charged." (65 Ill. App. 3d 981, 985.) We granted the People's petition for leave to appeal.

We would first observe that the question this appeal presents is not moot, although the defendant has already served the sentence imposed for leaving the scene of an accident involving death or personal injury. The reason why the appeal will be entertained was illustrated in *United States v. Morgan* (1954), 346 U.S. 502, 512-13, 98 L. Ed. 248, 257, 74 S. Ct. 247, 253, in which the court stated:

> "Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. *** [W]e think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid."

See also *People v. Twomey* (1973), 53 Ill. 2d 479; *People v. Neber* (1968), 41 Ill. 2d 126.

A so-called "hit and run" statute was first enacted in

our State in 1923 as section 41a of the Motor Vehicle Law (Smith-Hurd Ill. Rev. Stat. 1923, ch. 121, par. 242a). It provided in part:

> "No person operating or driving a vehicle on the highway *knowing* that an injury has been caused to a person or damage has been caused to property *** shall leave *** without stopping and giving his name [and] residence *** to the injured party or to a police officer ***." (Emphasis added.)

Section 41a was revised and superseded in 1935 when Illinois adopted the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1935, ch. 121, pars. 276 through 417). The revised provision of the new act, however, did not contain the term "knowing," which had appeared in the original statute (Ill. Rev. Stat. 1935, ch. 121, par. 311). Excepting minor language changes that are not relevant here, this provision is substantially as it was enacted in 1935. Section 11—401 of the Illinois Vehicle Code, the statute under which the defendant was prosecuted, read:

> "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and *** shall remain at, the scene of the accident until he has fulfilled the requirements of Section 11—403." (Ill. Rev. Stat. 1975, ch. 95½, par. 11—401(a).)

Section 11—403 of the Code imposes upon the driver a duty to render aid and to provide specified information to the victims of the accident. Ill. Rev. Stat. 1975, ch. 95½, par. 11—403.

The People's principal contention is that the 1935 act in omitting the term "knowing" indicated a legislative intent to make leaving the scene of an accident involving death or personal injury an absolute- liability offense. The People point out that the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4—9) states that absolute liability

may be imposed where "the statute defining the offense clearly indicates a legislative purpose" to do so. We are also referred to *People v. Walker* (1974), 18 Ill. App. 3d 351, in which it was held that section 11—401 created an absolute-liability offense and that knowledge of the accused was not required to prove a violation of the statute.

We cannot accept the People's position. Though it has been held that an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed (see, *e.g., People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366; *State v. Dobry* (1934), 217 Iowa 858, 250 N.W. 702), the presumption is not controlling (*Chicago & Illinois Midland Ry. Co. v. Department of Revenue* (1976), 63 Ill. 2d 474; *Roth v. Northern Assurance Co.* (1964), 32 Ill. 2d 40), and may be overcome by other considerations (*Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, *cert. denied* (1975), 421 U.S. 914, 43 L. Ed. 2d 780, 95 S. Ct. 1573).

In any event, here the presumption is not invocable because the action of the legislature in 1935 was to adopt a new act, the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1935, ch. 121, pars. 276 through 417), and not to amend the previous statute. The presumption of a legislative intent to change the law as it formerly existed does not then apply. (See *City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941.) This was illustrated, too, in *State v. Feintuch* (1977), 150 N.J. Super. 414, 375 A.2d 1223, where the appellate division of the superior court of New Jersey considered the precise question before us. The court held that the legislature in enacting a new so-called "hit and run" statute, which did not include the term "knowing" as had appeared in the superseded statute, did not intend to discontinue the requirement of knowledge.

Nor does the omission or addition of words in a new statute necessarily indicate a legislative intent to change the effect of the earlier statute. This court in *Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, 175, observed:

"In the revision of statutes neither an alteration in phraseology, nor the omission or addition of words in the later statute, necessarily alters the construction of the former act. A change of construction is authorized only where the intent of the legislature is clear or the language used in the revised statute plainly requires it. (*Bartholow v. Davies* [1917], 276 Ill. 505.)"

A factor to be considered in determining whether a statute creates an absolute-liability offense is the possible punishment which can be imposed for a violation. It would certainly be unreasonable to conclude that the legislature intended to subject a person to a severe penalty for an offense that he might unknowingly commit. (See *Morissette v. United States* (1952), 342 U.S. 246, 256, 260-61, 270-71, 96 L. Ed. 288, 296-97, 298-99, 304-05, 72 S. Ct. 240, 246, 248-49, 253-54.) The statute involved here, section 11–401, provides for penalties that in this context must be considered substantial. The offense created is a Class A misdemeanor calling for a maximum penalty of a fine of $1,000 and a sentence to the penitentiary of 364 days.

Our legislature in section 4–9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4–9) has clearly showed its intention that one should not be subject to serious criminal penalties unless the proscribed act has been committed knowingly. The section provides that there may be an absolute-liability offense only if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500 or where the statute defining the offense clearly indicates a legislative

purpose to impose absolute liability for the conduct described. (Ill. Rev. Stat. 1975, ch. 38, par. 4—9.) In considering whether there was such a legislative purpose in enacting a statute, the simple fact that there is no express language calling for a mental state, such as knowledge, does not of itself require a conclusion that none is required and that the offense created is an absolute-liability offense. (See *Morissette v. United States* (1952), 342 U.S. 246, 263, 96 L. Ed. 288, 300, 72 S. Ct. 240, 250; *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 424.) This is illustrated in the committee comments to section 4—9, which in part state:

> "This section is intended to establish, as an expression of general legislative intent, rather strict limitations upon the interpretation that mental state is not an element of an offense, although the express language of the provision defining the offense fails to describe such an element. ***
>
>     * * *
>
> In addition to permitting a construction requiring absolute liability in offenses [not] punishable by incarceration or by a fine of not more than $500, the second part of section 4—9 expresses the policy that in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state, as expressed in Section 4—3." (Ill. Ann. Stat., ch. 38, par. 4—9, Committee Comments, at 283 (Smith-Hurd 1972).)

This court in *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 423-25, quoted from these committee comments in holding that the penalty provision of the Motor Fuel Tax Law required a showing of knowledge to establish a violation of the statute even though there was no express requirement for knowledge in the penalty provision of the statute.

It should be observed that in *People v. Walker* (1974), 18 Ill. App. 3d 351, upon which the People rely, the court did not consider the provisions of section 4—9 which we have just discussed or the committee comments to the section when it, erroneously, we judge, held that section 11—401 created an absolute-liability offense.

Most States have adopted what have been popularly described as "hit and run" statutes, a majority of which have been patterned after the Uniform Motor Vehicle Code and which are similar to our statute. (Uniform Vehicle Code sec. 10—101 *et seq.* (1962). See also Annot., 23 A.L.R.3d 497 (1969).) In many jurisdictions where the statutes do not contain the terms "knowingly," or "wilfully" or similar language, courts have held that a driver must have had knowledge of the collision or accident before he can be held accountable under the statute. (See, *e.g., Kimoktoak v. State* (Alas. 1978), 584 P.2d 25; *State v. Wall* (1971), 206 Kan. 760, 482 P.2d 41; *State v. Martin* (1968), 73 Wash. 2d 616, 440 P.2d 429, *cert. denied* (1969), 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 855; *State v. Lemme* (1968), 104 R.I. 416, 244 A.2d 585; *Herchenbach v. Commonwealth* (1946), 185 Va. 217, 38 S.E.2d 328.) There are other jurisdictions which go beyond this requirement and in addition require that the accused have knowledge that an injury or death was involved. (See, *e.g., State v. Minkel* (1975), 89 S.D. 144, 230 N.W.2d 233; *State v. Etchison* (1972), 188 Neb. 134, 195 N.W.2d 498; *Campbell v. Westmoreland Farm, Inc.* (E.D.N.Y. 1967), 270 F. Supp. 188; *People v. Holford* (1965), 63 Cal. 2d 74, 403 P.2d 423, 45 Cal. Rptr. 167.) The People do not cite, and our research has not disclosed, a single decision in which a hit and run statute has been held to create an absolute-liability offense.

The Supreme Court of Kansas in *State v. Wall* (1971), 206 Kan. 760, 482 P.2d 41, considered the question of what knowledge was required of an accused in order to

establish a violation of two Kansas statutes that were identical to sections 11–401 and 11–403. The court held that knowledge that there had been a "collision" must be proved in order to show a violation. The court observed that since the statute imposed an affirmative duty to render aid to victims of an accident involving injury or death the legislature could not reasonably be said to have intended to impose the harsh penalty provided upon persons who were unaware that there had been a collision. (206 Kan. 760, 764, 482 P.2d 41, 45.) We consider this to be a proper conclusion. Too, we would note that an obvious purpose of the statute is to assure that injured victims of accidents be given prompt medical attention. (Ill. Rev. Stat. 1975, ch. 95½, par. 11–403.) It is apparent that this duty to render aid to victims could not be imposed upon a driver without requiring that he have knowledge that an accident or collision had occurred.

We consider that to show a violation of section 11–401 the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision. We do not, however, hold that it is necessary for the prosecution to show also that the accused knew that injury or death resulted from the collision. To require this additional proof would impose a burden that would be unrealistically difficult to sustain and would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*