# IN THE COURT OF APPEALS OF IOWA

No. 22-0231
Filed March 29, 2023

**STATE OF IOWA,**
   Plaintiff-Appellee,

**vs.**

**LEAH MARIE SWIFT,**
   Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Mark T. Hostager, District Associate Judge.


A defendant appeals her conviction for child endangerment. **AFFIRMED.**


Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.


Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A jury convicted Leah Swift of child endangerment for leaving her six-year-old son unattended in a daycare parking lot. On appeal, Swift challenges the sufficiency of the evidence to support her conviction. Specifically, she claims the State presented insufficient evidence to prove that her actions created a "substantial risk to the child's physical, mental or emotional health or safety" or that she acted with knowledge that her actions created that risk. She contends that her actions, "although not exactly prudent or smart, did not rise to the level of criminality." Finding substantial evidence supports the conviction, we affirm.

**I.      Facts and Prior Proceedings**

One Thursday in December, Swift was scheduled to exchange her son for visitation with his father at 5:30 p.m. in the parking lot of a daycare center. But Swift decided to drop the child off "a little after four" so that she could run errands. She neither contacted the child's father nor alerted the daycare center that the child would be waiting by himself in the parking lot.

But the child's presence in the parking lot did not go unnoticed. Another mother was picking up her children from daycare that afternoon when she "saw a shadow that looked like a child underneath by the school bus" and stopped to investigate. She looked under the bus and found the child, who was crying and "really upset." She then notified the daycare workers and took him inside.

Swift testified that she regularly dropped her son at that location and he knew the area because she lived two blocks in one direction and her brother lived two blocks in the other direction. According to Swift, the child regularly traveled between the two homes. But Swift had never left the child alone in the parking lot

before. She claimed that she did not know exactly what time it was because she was having "cell phone issues," which also prevented her from contacting the child's father. She planned to visit the cell phone store after the drop off.

Even if the location was familiar to the child, it was not a safe place for him to be on his own, especially at that time of day, in the opinion of the daycare director. She explained that the daycare center was situated at the intersection of two busy roads, with the highest volume of traffic between 4:00 and 6:00 p.m. Those hours were also the busiest for daycare pickups. And no fences or other barriers separated the parking lot from the intersection.

It was also December. By the time the child was brought inside, it was growing dark and chilly. The child was wearing shorts, a t-shirt, and no coat. The daycare director knew the child because he had attended the daycare, but he was no longer enrolled. She tried to comfort the child, who was still scared and crying. The director then contacted the child's father, who came to pick up his son. The father recalled that the child "was still very upset by the time I got there."

The State charged Swift with child endangerment, an aggravated misdemeanor, under Iowa Code section 726.6(1)(a) and (7) (2020). A jury found Swift guilty as charged. The district court sentenced her to a suspended term of incarceration and placed her on probation. Swift appeals.

## II.   Analysis

On appeal, Swift argues the State presented insufficient evidence for the jury to convict her of child endangerment. The district court instructed the jury that the State had the burden to prove these elements:

1. Swift was a parent having custody or control of the child.

2. The child was under the age of 14 years.

3. Swift acted with knowledge that her actions were creating a substantial risk to the child's mental, physical, or emotional health or safety.

4. Swift's actions created a substantial risk to the child's physical, mental, or emotional health or safety.

Swift does not contest the first two elements. But she claims the State failed to meet its burden of proving the third and fourth elements. She contends the State did not offer substantial evidence to prove her actions created a substantial risk to the child's physical, mental, or emotional health or safety, or that she acted with knowledge that her actions created that risk.

We review Swift's sufficiency claim for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider the evidence in the light most favorable to the State, allowing for all reasonable inferences. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). If a rational jury could find guilt beyond a reasonable doubt, we affirm. *Id.*

**A. Substantial Risk**

We begin with Swift's argument that the State did not prove her actions created a substantial risk to her son's safety or physical, mental, or emotional health. "[Iowa Code] [s]ection 726.6(1)(a) requires a showing of substantial risk to a child's physical health or safety. It does not require proof that the conduct was negligent or reckless, although such actions may create a substantial risk." *State v. Anspach*, 627 N.W.2d 227, 232 (Iowa 2001). Under this standard, it is

"unnecessary to prove that the physical risk to a child's health or safety is likely. Rather a showing that the risk is real or articulable will suffice." *Id.* at 232–33.

To support her contention that her actions were imprudent, but not criminal, Swift cites an out-of-state case: *State v. Allen*, 747 N.E.2d 315 (Ohio Ct. App. 2000). In that case, the Ohio court found that a father who left his seven-year-old son home alone for a few minutes did not create a substantial risk to the child's health and safety. *Id.* at 316–17. That case is distinguishable on both the facts and the law. The Ohio father left his son unattended in the safety of his own home for a short time. *Id.* By contrast, Swift left her son unattended in a busy public parking lot for what would have been over an hour. On the legal side, Ohio's child endangerment statute requires "the culpable mental state of *recklessness*" and "a *strong possibility*, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist" to constitute a substantial risk. *Id.* at 316 (emphases added) (citation omitted). This is a higher burden than Iowa law imposes. *See Anspach*, 627 N.W.2d at 232.

Viewing the record in the light most favorable to the State, we find ample evidence that Swift's actions created a substantial risk to the child's physical, mental, or emotional health or safety. Swift left her child, who was only six years old, unattended in a busy parking lot next to a busy intersection at dusk. No one besides Swift knew the child was waiting alone. The child could have been struck by a vehicle in the parking lot or in the intersection if he wandered away. The jury could also reasonably infer that the child could have become the victim of an ill-intentioned stranger who found him left alone with no one to protect him. *See Wood v. Commonwealth*, 701 S.E.2d 810, 816 (Va. Ct. App. 2010) (noting danger

of driving children to "public parking lot surrounded by moving vehicles and strangers"). In addition, the jury heard that the weather was chilly and the child was not dressed for the cold. Lastly, the child was distraught when he was brought inside the daycare center until his father picked him up. Based on this evidence, a rational jury could conclude that Swift's actions created a substantial risk to the child's physical, mental, or emotional health or safety.

## B. Knowledge

We next turn to Swift's argument that the State did not prove she acted with knowledge that her actions created a substantial risk. "[K]nowledge may be proved not only by direct evidence, but also by reasonable inferences drawn from the circumstances." *State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005) (citing *State v. Miller*, 308 N.W.2d 4, 7 (1981)). A jury may infer that the defendant knew about the risk when the circumstances created a risk of harm that was "easily foreseeable." *See id.* at 431 ("That is all the State was required to prove: defendant's knowledge that the children were in a position of substantial risk.").

Swift contends on appeal that she "did not think she was placing the child in a dangerous situation." Yet she acknowledged at trial that she "screwed up" by leaving the child unattended in the parking lot and that she "could have made a better decision."[1] A reasonable jury could infer from the totality of circumstances that Swift knew that she created a substantial risk of harm. The record featured

---

[1] Her acknowledgment shows that this is not a case where a parent was exposed to criminal liability for consciously choosing to give their child a "long leash." *See* David Pimentel, *Criminal Child Neglect and the "Free Range Kid": Is Overprotective Parenting the New Standard of Care?*, 2012 Utah L. Rev. 947, 968 (2012).

the "easily foreseeable" risks of leaving an underdressed six-year-old child unattended in a busy parking lot next to a busy intersection for over an hour while it was getting dark. *See Millsap*, 704 N.W.2d at 431. Thus, a rational jury could conclude that Swift acted with knowledge that her actions created a substantial risk to the child's physical, mental, or emotional health or safety.

**III.    Conclusion**

Viewing the record in the light most favorable to the State, substantial evidence supports Swift's conviction for child endangerment. Thus, we affirm.

**AFFIRMED.**