NOT DESIGNATED FOR PUBLICATION

No. 112,496

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGELA NAILS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed January 29, 2016. Affirmed.

*Christian Webb*, of The Webb Law Center, of Olathe, for appellant.

*Andrew Hamline*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and POWELL, JJ.


*Per Curiam*: Angela Nails appeals from her misdemeanor conviction of leaving the scene of an accident, arguing there was insufficient evidence for the jury to have found her guilty. We disagree and affirm.

Nails was charged with leaving the scene of an accident involving property damage less than $1,000 in violation of K.S.A. 2013 Supp. 8-1602(a). At trial, the victim, Jarrod Caldwell, testified that on February 15, 2014, he was involved in a hit-and-run collision. At approximately 3:45 p.m., as he was entering northbound Interstate 35 (I-35)

1

from eastbound Interstate 435 (I-435), a red SUV attempted to pass his car on his passenger side using the shoulder. The SUV did not successfully clear his vehicle, making contact on his front passenger's side and the SUV's rear driver's side. Caldwell stated he felt and heard the collision. He estimated the SUV was traveling at a speed of approximately 85 miles per hour while passing his vehicle.

The driver of the SUV did not pull over despite Caldwell's several attempts to get the driver's attention to do so. After these unsuccessful attempts, Caldwell called 911 and then followed the SUV for about 5 minutes while on the phone with dispatch until a Kansas Highway Patrol trooper arrived. Caldwell never lost sight of the SUV that collided with his car. Trooper Andrew Campbell located the SUV and pulled behind it with his siren and lights on. After about 20 seconds—an unusually slow yield, according to Campbell—the driver of the SUV pulled over, as did Caldwell.

Upon initial contact, Campbell notified Nails that she was called in as a hit-and-run driver. Nails stated she did not know what he was talking about. Campbell was trained in advanced accident investigation at the Kansas Police Academy and testified that the damage to both of the vehicles matched the accident that Caldwell described and, in his opinion, was caused by Nails while performing an illegal passing maneuver and driving on the shoulder. Campbell testified that he believed Nails caused the collision and then fled the scene. He further testified that the collision was towards the very far end of the spectrum of a minor traffic accident; however, based upon the damage, he believed the collision would absolutely be felt and heard by the drivers.

Nails refused to complete a witness form for the accident. When Campbell informed Nails that Caldwell was alleging Nails illegally passed him on the shoulder, she stated, "Well, if he says that, I'll just say he came over and hit me." She then made her own 911 call and requested that a supervising officer come to the scene. Campbell's supervising officer Lieutenant James Oehm arrived and requested that the vehicles move

2

from the Interstate to a residential side street so the parties could take photographs of the vehicles. Oehm testified that based on his brief overview of the situation, the damage to both vehicles appeared to match Caldwell's description of events.

During her defense, Nails called chiropractor Dr. Nalisa Pouliot to testify regarding injuries that Nails allegedly sustained in the collision. Dr. Pouliot testified that Nails self-reported being involved in the accident and that she treated Nails for 4 to 6 weeks for pain resulting from the accident. Dr. Pouliot did not testify as to when Nails became aware of the accident. Nails did not testify as to her version of events.

The jury found Nails guilty of leaving the scene of an accident. The district court sentenced her to 30 days in jail but suspended the sentence and placed her on probation for 9 months. Nails timely appeals.

When the sufficiency of evidence is challenged in a criminal case, we review all the evidence in the light most favorable to the prosecution. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). The conviction will be upheld if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. 299 Kan. at 525. In determining whether there is sufficient evidence to support a conviction, we generally will not reweigh the evidence or the credibility of witnesses. *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015); *Williams*, 299 Kan. at 525. It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Nails argues that the State failed to provide sufficient evidence proving that she had actual knowledge of the collision. Kansas law requires the driver of a vehicle involved in an accident to remain at the scene. K.S.A. 2014 Supp. 8-1602(a) states:

3

"The driver of any vehicle involved in an accident resulting in injury to, great bodily harm to or death of any person or damage to any attended vehicle or property shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of K.S.A. 8-1604, and amendments thereto."

A person who violates this statute where the total property damage is less than $1,000 is guilty of a misdemeanor. K.S.A. 2014 Supp. 8-1602(b)(1). In *State v. Wall*, 206 Kan. 760, 764, 482 P.2d 41 (1971), the Kansas Supreme Court held that knowledge of the collision was an essential element of this offense because it would be absurd to punish a driver for failing to remain at the scene of an accident if that driver was unaware of the accident's occurrence.

Here, when viewing the evidence in the light most favorable to the State, it appears to us there was sufficient evidence to prove Nails' intent to leave the scene of the accident and thus sufficient evidence existed to support the jury's finding that Nails was guilty of leaving the scene of an accident. At trial, Caldwell testified that he felt and heard the collision. Photographs of the damage to the vehicles were admitted into evidence. Campbell, who had advanced training in collision investigation, testified that the collision absolutely would have been felt by both drivers. Oehm stated that his brief overview of the vehicles seemed to match Caldwell's description of events. Finally, Nails' chiropractor testified that she treated Nails for pain associated with a car accident that she self-reported to the doctor occurred on February 15, 2014, the same day as the hit-and-run.

However, Nails counters there was not sufficient evidence to support a guilty conviction because there was no direct proof that she intended to leave the scene of the accident. We are unpersuaded by this argument because "'[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly

4

deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference."' *State v. Lewis*, 301 Kan. 349, 371, 344 P.3d 928 (2015) (quoting *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 9, 245 P.3d 1030 [2011]). "A jury that has convicted a defendant is presumed to have believed the State's evidence and to have drawn from that evidence all inferences favorable to the State." *State v. Raskie*, 293 Kan. 906, 920, 269 P.3d 1268 (2012). Moreover, the *Wall* court specifically addressed the validity of circumstantial evidence in the context of leaving the scene of an accident:

> "We do not imply an accused must have positive knowledge of the nature or extent of injury resulting from the collision nor do we infer that a showing of knowledge of injury accident may not be made by circumstantial evidence. Direct evidence of absolute, positive, subjective knowledge may not always be obtainable. We think it sufficient if the circumstances are such as to induce in a reasonable person a belief that [a] collision has occurred; otherwise a callous person might nullify the humanitarian purpose of the statute by the simple act of immediate flight from an accident scene without ascertaining exactly what had occurred. [Citations omitted.]" 206 Kan. at 764.

Also relying on *Wall*, Nails asserts that because she stated she had no idea what was going on with the traffic stop, there was not sufficient evidence for the jury to find her guilty. However, *Wall* is factually dissimilar because it was the severity of the collision that rendered the defendant unaware he had left the scene of an accident. There, the defendant lost consciousness as a result of the accident and, in a dazed condition after this unconsciousness, wandered from the scene of the accident. There was medical testimony that the loss of consciousness could have caused the defendant to unknowingly leave the scene of the accident.

Here, Nails' intent can be established by "acts, circumstances, and inferences reasonably deducible from the evidence of acts and circumstances." *State v. Griffin*, 279 Kan. 634, 638, 112 P.3d 862 (2005). Based on the acts, circumstances, and inferences

5

surrounding the collision described above, we find it was perfectly rational for the jury to conclude Nails was guilty.

Affirmed.